**UNITED STATES of America,**
**Appellee,**

v.

**David ST. JOHN and Donald Roth,**
**Defendants–Appellants.**

**Nos. 05–2430–cr(L), 05–2438–cr(CON).**

United States Court of Appeals,
Second Circuit.

Feb. 22, 2008.

William I. Aronwald, Aronwald & Pykett, White Plains, New York, for Defendant–Appellant, St. John.

David L. Lewis, Lewis & Fiore, New York, New York, for Defendant–Appellant, Roth.

John T. Zach, Assistant United States Attorney (Cathy Seibel, Deputy United States Attorney; Katherine Polk Failla, Assistant United States Attorney, of counsel, on the brief), for Michael J. Garcia, United States Attorney for the Southern District of New York, New York, NY, for Appellee.

Present: Hon. RALPH K. WINTER, Hon. CHESTER J. STRAUB, Hon. SONIA SOTOMAYOR, Circuit Judges.

### SUMMARY ORDER

Defendants-appellants David St. John ("St. John") and Donald Roth ("Roth") (collectively, the "defendants") appeal from their May 16, 2005 judgments of conviction after a jury trial in the United States District Court for the Southern District of New York (Robinson, J.) for conspiracy to commit witness tampering and obstruction of justice, in violation of 18 U.S.C. § 371. Roth was sentenced principally to a term of 60 months' imprisonment and St. John to a term of 48 months' imprisonment, both to be followed by three years' supervised release. We assume the parties' familiarity with the facts and procedural history of this case.

[1] *Challenged Evidentiary Rulings*

■ First, defendants claim that they were denied a fair trial as a result of the district court's decision to admit evidence of the Antonio ("Tone") Bryant murder case pursuant to Federal Rule of Evidence 404(b). Both defendants contend that the Rule 404(b) evidence overshadowed the conduct charged in the Indictment; Roth asserts that the evidence constituted improper propensity evidence and thus constituted an error of law, while St. John maintains that the evidence was "strikingly dissimila[r]" to the conduct charged. Reviewing the district court's ruling for abuse of discretion, *see United States v. Taubman,* 297 F.3d 161, 164 (2d Cir.2002) (per curiam), we find no error in its determination that the proffered evidence was properly admitted "other act" evidence, *see United States v. Pascarella,* 84 F.3d 61, 69 (2d Cir.1996). Under our "inclusionary" approach to "other crimes, wrongs, or acts" evidence, *see United States v. Harris,* 733 F.2d 994, 1006 (2d Cir.1984), evidence of the Tone Bryant murder case was relevant to the defendants' knowledge and intent, *see United States v. Colon,* 880 F.2d 650, 657 (2d Cir.1989), and the existence of a common plan or scheme, *see United States v. Sliker,* 751 F.2d 477, 486–87 (2d Cir.1984). In addition, defendants' claims of prejudice are unavailing, as the district court did not abuse its discretion in setting the limits on the amount of evidence admitted under Rule 404(b), and any risk of unfair prejudice was minimized with a "thorough and carefully worded limiting instruction." *United States v. Paulino,* 445 F.3d 211, 223 (2d Cir.2006).

■ Second, defendants claim that the district court improperly excluded expert testimony at trial. Although we acknowledge the restrictiveness of the district court's eventual ruling, we conclude that it did not abuse its discretion because the jury was instructed that it is lawful for a defense lawyer or a representative to contact a prosecution witness, and defendants chose this limiting instruction over proffering expert witness testimony within the parameters set by the district court. *See*

*Zuchowicz v. United States,* 140 F.3d 381, 386 (2d Cir.1998) (reviewing district court's decision to admit or exclude expert testimony under a "highly deferential abuse of discretion standard"); *United States v. Stewart,* 433 F.3d 273, 311 (2d Cir.2006) (upholding district court's decision to exclude expert testimony on the legality of defendant's trade, as this would have potentially usurped "the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it").

██ Third, defendants assert that they were prejudiced by the district court's ruling excluding the testimony of Orange County Court Judge Stewart Rosenwasser, the presiding judge in the Tone Bryant murder case, and quashing their subpoena for such testimony. Because Assistant District Attorney David Byrne, who was in charge of the Tone Bryant case, testified about the reasons for the plea offers he made, Judge Rosenwasser's testimony concerning the same subject matter was unnecessary and speculative. We therefore find no error in the district court's ruling. *See In re Subpoena Issued to Dennis Friedman,* 350 F.3d 65, 68 (2d Cir.2003) (reviewing district court's ruling on motion to quash subpoena for abuse of discretion); *United States v. Ianniello,* 866 F.2d 540, 544 (2d Cir.1989) (noting that "asking a district judge to testify is a serious matter"). Further, to the extent that defendants sought testimony regarding Judge Rosenwasser's mental processes, exclusion of that testimony was not in error. *See Rubens v. Mason,* 387 F.3d 183, 191 (2d Cir.2004) (holding that admission of an arbitrator's affidavit in a subsequent malpractice action was in error, in part, because it violated the rule proscribing admission of "testimony revealing the deliberative thought processes of judges, juries, or arbitrators").

██ Finally, defendants contend that a fingerprint analysis performed on Government Exhibit 18—which was an affidavit in Yolanda Delgado's possession—constituted *Brady* material that should have been turned over prior to trial. *See Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). St. John also claims that the district court improperly excluded testimony concerning the analysis pursuant to Fed.R.Crim.P. 16. As the district court concluded, however, the fingerprint analysis is not *Brady* material because it would not have "affected the outcome of the case," nor would it have "put the whole case in such a different light as to undermine confidence in the verdict," *United States v. Coppa,* 267 F.3d 132, 135 (2d Cir.2001) (internal quotation marks omitted). Further, because there was substantial evidence tying Government Exhibit 18 to the defendants, the district court did not abuse its discretion in precluding testimony on the conclusions, or lack thereof, that could be drawn from the fingerprint analysis. *See United States v. Anglin,* 169 F.3d 154, 162 (2d Cir.1999).

[2] *Witnesses' Assertions of Privilege*

██ Defendants argue that the district court erred in upholding the attorney-client privilege as to confidential communications between informant witnesses Timothy Cherry ("Cherry") and Raymond Bryant ("Bryant") and the counsel who had been appointed to represent them after Roth withdrew. This contention is unavailing for the reasons described by the district court: the fact that Cherry allegedly lied under oath and his attorney later informed the court that his client was maintaining his position does not involve the attorney-client privilege. *See In re Grand Jury Subpoena Duces Tecum,* 731 F.2d 1032, 1038 (2d Cir.1984) (collecting cases).

We also reject defendants' argument that it was improper for Cherry and Raymond to assert the attorney-client privilege outside the presence of the jury on the basis that they were entitled to an adverse inference because of the witnesses' invocation of the privilege. There is nothing in our case law to suggest that such an assertion of privilege must be made in the presence of the jury. Indeed, in the civil context, we have held that there is no basis for the jury to draw an adverse inference because of the assertion of the attorney-client privilege. *See Nabisco, Inc. v. PF Brands, Inc.,* 191 F.3d 208, 226 (2d Cir. 1999) ("[W]e know of no precedent supporting such an [entitlement to an adverse] inference based on the invocation of the attorney-client privilege."), *abrogated on other grounds, Moseley v. V Secret Catalogue, Inc.,* 537 U.S. 418, 123 S.Ct. 1115, 155 L.Ed.2d 1 (2003). Therefore the error, if any, was harmless.

Defendants' claim that they were entitled to notes taken by attorneys at proffer sessions for cooperating witnesses is equally unavailing. Defendants only speculate that these notes reflect inconsistent statements made by the cooperating witnesses. Thus, the district court did not abuse its discretion in finding the notes to be protected work product. *See United States v. Nobles,* 422 U.S. 225, 237–38, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (observing that the work product doctrine is vital to "assuring the proper functioning of the criminal justice system").

[3] *Failure to Instruct Jury on 18 U.S.C. § 1515(c)*

Defendants further claim that the district court erred in not instructing the jury on 18 U.S.C. § 1515(c). Because defendants did not raise the issue at the time the instructions were given, the standard of review is plain error. Fed.R.Crim.P.

52(b). Defendants contend that they meet this standard because § 1515(c) provides them with a complete defense to the offenses charged. We do not find it necessary, however, to decide whether § 1515(c) is a complete or an affirmative defense because the substance of this provision was, in fact, given by the court when the jury was instructed that it necessarily had to find that the defendants knowingly conspired to pursue an unlawful purpose. This instruction, by definition, excludes the possibility of bona fide legal advice constituting criminal behavior. *See United States v. Doyle,* 130 F.3d 523, 540 (2d Cir.1997) (affirming conviction where "the essence of [defendant's] request [was] effectively presented elsewhere in the charge"). Accordingly, the district court did not err in charging the jury as requested by the parties.

[4] *Jury Charge under United States v. Arthur Andersen*

Defendants contend that the intervening decision of the Supreme Court in *Arthur Andersen LLP v. United States,* 544 U.S. 696, 125 S.Ct. 2129, 161 L.Ed.2d 1008 (2005), renders the jury charge invalid. Viewing the charge as a whole, *see United States v. Aina–Marshall,* 336 F.3d 167, 170 (2d Cir.2003), we conclude that the district court conveyed the substantial equivalent of *Arthur Andersen*'s holding that the defendant must be "conscious of wrongdoing," *Arthur Andersen,* 544 U.S. at 706, 125 S.Ct. 2129, by instructing the jury to convict only if it found that each defendant acted with an "improper purpose" and "had the purpose of corrupt persuasion," the latter phrase defined as "includ[ing] an attempt to induce a witness to become unavailable to testify or to testify falsely." Thus, we find no error here. *See United States v. Kaplan,* 490 F.3d 110,

126 (2d Cir.2007).[1]

### [5] *Jury Charge under United States v. Gaines*

Defendants similarly assert that the district court's instructions concerning witness credibility and defendants' testimony were improper in light of this Court's intervening decision in *United States v. Gaines*, 457 F.3d 238 (2d Cir. 2006). Viewing the charge as whole, *see United States v. Brutus*, 505 F.3d 80, 85 (2d Cir.2007), it is questionable whether it is erroneous under current law. Although *Gaines* expressly disapproved of jury instructions that included "deep personal interest language," 457 F.3d at 249, we did not decide whether this instruction, on its own, sufficiently diluted the presumption of innocence to constitute reversible error. Nevertheless, defendants argue that, taken in combination with the court's general instruction that any interested witness has "a motive to testify falsely," the charge was erroneous. Assuming the two portions of the charge should be read and analyzed together, there is no " 'reasonable possibility that the [error] complained of might have contributed to the conviction.' " *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (alternation in original) (quoting *Fahy v. Connecticut*, 375 U.S. 85, 86–87, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963)). The cooperating witnesses presented voluminous testimony regarding the operation of the scheme. Cherry testified about a meeting with defendants at the New Orleans Steakhouse, at which Roth explained how he "[got]

witnesses to flip their story." The witnesses' testimony, moreover, was corroborated by documentary evidence at trial, including copies of the false exculpatory affidavits that were recovered from St. John, Roth and Yolanda Delgado. This evidence makes plain that the error, if any, was harmless. *See Brutus*, 505 F.3d at 88–90.

### [6] *Seating of Alternate Juror*

St. John maintains that the district court improperly seated a juror who he claims had an admitted bias against defense counsel. The juror's complaint about defense counsel speaking during the government's summation, however, gives no indication on its face of any purportedly partiality. The district court, moreover, questioned the juror directly about his ability to deliberate impartially. Thus, the district court did not abuse its discretion when it decided to seat this alternate juror. *See United States v. Torres*, 128 F.3d 38, 43–44 (2d Cir.1997) (trial judge enjoys broad discretion in determining whether or not to excuse a juror for cause, and its decision is entitled to deference on appeal).

### [7] *Denial of a Fair Trial*

Roth submits that "by rulings, by rebukes and by a combination of both," the district court deprived him of a fair trial. Roth, however, does not point to specific portions of the record or particular rulings, but rather reargues that certain evidence admitted at trial pursuant to Rule 404(b) was overly prejudicial. This argument is meritless. We have made clear that in

---

1. The government urges us to clarify whether, in light of the Supreme Court's decision in *Johnson v. United States*, 520 U.S. 461, 467–70, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), our "modified plain error" approach survives. *See United States v. Viola*, 35 F.3d 37, 41–44 (2d Cir.1994) (applying "modified plain error" review—which shifts the burden of persuasion from defendant to the government when showing prejudice under the plain error standard—when the source of the alleged error was a supervening judicial decision that altered "a settled rule of law in the circuit"). We need not address the merits of this argument because we find that there was no error, plain or otherwise, in the instructions.

"determining whether a trial judge's conduct deprived a defendant of a fair trial, we must examine the entire record to determine if jurors have been impressed with the trial judge's partiality to one side to the point that this became a factor in the[ir] determination." *United States v. Matt,* 116 F.3d 971, 974 (2d Cir.1997) (per curiam) (alteration in original) (internal quotation marks omitted). The record reflects no such partiality and we reject this argument.

 Roth additionally contends that the district court in silencing him on one occasion deprived him of a fair trial. As the government points out, the statement at issue was made during a recess, occurred outside of the presence of the jury, and was made in response to counsel's interruption after repeated prior admonishments to wait until the district court had finished speaking. Roth's challenge is therefore unavailing.

[8] *Roth's Challenge to his Sentence*

 Roth contends that the district court's sentence was procedurally and substantively unreasonable. We find no merit in Roth's claim, which we review for reasonableness. *See United States v. Fernandez,* 443 F.3d 19, 26 (2d Cir.2006). The district court's sentence of 60 months' imprisonment, while it was the statutory maximum, was less than half of the low-end of the applicable Guidelines range. Moreover, the district court considered all of the § 3553(a) factors in determining the appropriate sentence and did not rely solely on the Guidelines, which it treated as advisory. Giving due respect to the district court's reasoned judgment, *see Gall v. United States,* —— U.S. ——, 128 S.Ct. 586, 594–96, 169 L.Ed.2d 445 (2007), we see neither legal error nor an unreasonable sentence.

We have considered defendants' remaining arguments and find them to be without merit. For the reasons discussed, the judgment of the district court is AFFIRMED.